# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHARLIE MATTHEWS #334-750
    Plaintiff

    v.     :  CIVIL ACTION NO. RDB-13-59

VALERIE MURRAY, et al.,
    Defendants

## MEMORANDUM OPINION

This 42 U.S.C. § 1983 prisoner civil rights action seeks money damages[1] for the alleged denial of proper medical care to treat pain caused by severe scoliotic deformity.[2] Plaintiff Charlie Matthews ("Matthews"), a Maryland Division of Correction ("DOC") prisoner who entered prison on or about April 10, 2006,[3] claims prison health care providers have failed to address the pain and disability caused by his condition with surgery, pain medication and access to a bottom bunk and medical mattress. ECF No. 1. Matthews names individual health care providers Valerie Murray, Colin Ottey, M.D., William Beeman (former Charge Nurse and current Assistant Regional Director of Nursing for the Cumberland Region), and Physicians' Assistants ("PAs") Greg Flury and Lisa Schindler. Defendants Ottey, Beeman and Flury have

---

[1] Matthews also requests appointment of counsel. (ECF No. 39). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Matthews has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issue pending before the Court is not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent him under §1915(e)(1), and the motion shall be denied.

[2] Scoliosis is a lateral (side-to-side) curve in the spine, often combined with a rotation of the vertebrae. *See* http://medical-dictionary.thefreedictionary.com/scoliosis. In addition to scoliosis, Matthews has been shot and stabbed in the back. ECF No. 14, Attachment 4, p. 2.

[3] Matthews currently is housed at North Branch Correctional Institution ("NBCI"), a maximum security facility in Cumberland.

filed Motions to Dismiss or in the Alternative for Summary Judgment that shall be treated as Motions for Summary Judgment. (ECF Nos. 14, 27 and 28). Defendants Murray and Schindler have filed Motions to Dismiss or in the Alternative, Motions for Summary Judgment (ECF Nos. 16 and 31) that shall be treated as Motions to Dismiss. Matthews opposed the dispositive motions filed by Murray and Ottey (ECF Nos. 21 and 25), and Ottey has filed a reply to the opposition response (ECF No. 27) also opposed by Matthews. ECF No. 35. A hearing is not needed to resolve the constitutional issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2011).

## Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of Plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court recently articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1 (2002); *Neitzke v.*

> *Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require Defendant to establish "beyond doubt" that Matthews can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 563. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.*. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants Ottey, Beeman and Flury have styled their motions as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Given the exhibits included with their motions, it is apparent that these Defendants intend to seek summary judgment. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that

is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court"s consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4] In any event, in accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Matthews was informed of his right to file a response to the Motions, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF Nos. 15, 29 and 32. As noted, he filed an opposition response to Ottey's motion, but did not oppose motions filed by Beeman and Flury.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties" procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Matthews has not filed an affidavit under Rule 56(d).[5] Moreover, with regard to the Ottey motion, Matthews has filed an opposition response. I am satisfied that it is appropriate to address these three Defendants' motions as motions for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: by its

---

[5] Although he has not filed an affidavit, Matthews has written the Court seeking intervention in order to obtain medical records from 2009 through 2011, which predate those provided by Defendants as exhibits to their dispositive motions. ECF No. 36. For reasons apparent herein, these earlier medical records are not needed for resolution of this case.

5

very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Fourth Circuit has explained that the party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must" set forth specific facts showing that there is a genuine issue for trial. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). However, the Court must "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Because Matthews is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must, however, also abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial. *Bouchat*, 346 F.3d at 526; *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993); *Celotex Corp.*, 477 U.S. at 323-24). The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

## Eighth Amendment Right to Medical Care

In alleging a denial of his Eighth Amendment right to necessary medical care, Matthews must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Clearly, Matthews' back pain, which has lasted more than 15 years and is accompanied by scoliosis, denotes a serious medical condition. Matthews, however, must also prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06).

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844; *see also Johnson v. Quinones*, 145 F.3d at 167. Prisoners are not entitled to unqualified access to health care, *see Davis v. Williamson*, 208 F.Supp. 2d 631, 633 (N.D.W.V. 2002); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and mere disagreement with the course of treatment does not

7

state an Eighth Amendment claim. *See Taylor v. Barnett*, 105 F.Supp. 2d 438, 487 (E.D. Va. 2000), citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

## Discussion

Matthews indicates he told Defendant Murray, who performed his April, 2006 medical intake at the Maryland Reception Diagnostic Classification Center ("MRDCC"), that he had scoliosis and was experiencing pain and tingling in his legs. He claims Murray responded that she would write a pass indicating he needed a medical mattress, bottom bunk status, and a back brace, but failed to do so. ECF No. 1, p. 2.

Matthews claims he was later examined by a prison doctor on July 17, 2007, after complaining of back pain. He states he was promised bottom bunk status, a medical mattress, an x-ray, and an orthopedic consultation. *Id.*, p. 3. He was subsequently transferred to Maryland Correctional Adjustment Center ("MCAC"), a maximum security facility, where on September 21, 2007, he was examined by Dr. Nelson.[6] Nelson told him he would receive the previously-promised accommodations, but failed to note this information in his medical record. *Id.*, p. 3.

On March 11, 2008, Matthews was transferred to NBCI, and explained his needs to "Intake Nurse Lisa (Doe)."[7] On May 5, 2009, he told Defendant Schindler he was in pain and experiencing tingling in his legs due to a weak mattress and having to jump from a top bunk. He claims Schindler promised him a bottom bunk, a back brace, and referral for orthopedic consultation, but merely ordered his referral to Defendant Ottey, a physician working at the Cumberland prison facilities. *Id.*, p. 4.

---

[6] Nelson is not named a defendant to this suit. In any event, Matthews' brief contact with Nelson occurred more than three years prior to the filing of this action, and – as further explained herein -- any claim against Nelson would be time-barred.

[7] It is unclear whether "Intake Nurse Lisa Doe" is Defendant Lisa Schindler.

8

Matthews indicates an x-ray was taken and on June 12, 2009, he was seen by Defendant Ottey.[8] Matthews claims he again requested bottom bunk status and a medical mattress, as well as pain medications and surgery to halt the continuing spinal curvature. He alleges Ottey promised lower bunk status and a medical mattress, but never followed through. *Id.*, pp. 4-5. Matthews recalls that Ottey told him he would receive surgery, but claimed it was expensive, so Matthews would need to "be patient" and would be placed on a waiting list. *Id.*, p. 5.

Matthews next alleges he was seen by Defendant Flury on October 9, 2012, and told Flury that the mattress and bottom bunk status had not been provided, and that prescribed medications were not addressing his pain. Matthews complains that Flury took no action and in fact noted that Matthews' scoliosis was merely "moderate." *Id.*, p. 5.

Two days later, on October 11, 2012, Matthews filed a sick call slip complaining of pain and that a promised x-ray had not been provided. *Id.*, pp. 4-5. On November 4, 2012, he told Ottey that the medication provided no relief, that his pain increased when lying in bed or standing or sitting for a prolonged period. He also told Ottey that jumping off a top bunk caused leg tingling and pain. Ottey promised an x-ray and stronger pain medication, as well as a double mattress and bottom bunk status, but indicated the requests needed approval from a medical committee. *Id.*, p. 6. The x-ray was taken on November 5, 2012, and Matthews was told to perform stretching exercises. *Id.*, pp. 6-7. Matthews claims nothing more has been provided. *Id.*, p. 7.

The version of events set forth by Defendants Ottey and Flury presents a somewhat

---

[8] Matthews' complaint recitations appear to be based on a medical record, although none of the parties has submitted record evidence outlining what, if any, treatment Ottey provided between his initial contact with Matthews in 2009 and July of 2012. Indeed, Matthews does not state that he was provided any care by Ottey during this period. Records provided subsequent to July of 2012 appear to be more complete.

9

different picture.[9] By his own admission, Matthews saw Ottey on one occasion in June of 2009, and did not again have contact with Ottey until the fall of 2012, after he was seen by Nurse Carla Buck and a November 4, 2012, follow-up visit with Ottey was arranged. ECF No. 1, p. 12.

During the November 4, 2012, visit, Matthews reported that his pain medication was not providing relief and that pain, which radiated down his leg, increased with sitting, standing or lying in bed. ECF No. 14, Attachment 4, Affidavit of Colin Ottey, M.D., p. 2. Matthews reported no loss of bladder or bowel control. Examination revealed tenderness in the spine with paravertebral muscle spasm, but no motor weakness or changes in coordination, balance or gait were observed. *Id.* Ottey discontinued Matthews' Naproxen[10] prescription and ordered Indomethacin[11] and Baclofen[12] for pain. Matthews was advised to avoid heavy lifting and told to return for further evaluation if his condition worsened or no improvement was seen in the coming weeks. *Id.*

Matthews was followed for his back pain by other medical providers. *Id.* On March 21, 2013, his pain medication regimen was modified to include Nortriptyline,[13] to be taken in

---

[9] Matthews names William Beeman as a Defendant but provides no detail as to how Beeman violated his civil rights. In his uncontroverted affidavit, Beeman states that he played no role in Matthews' health care. Beeman provided no clinical care to Matthews, and was not responsible for making clinical decisions regarding Matthews' medical needs, including the need for pain medications, medical assignment to a bottom bunk, physical therapy, surgery, or referral to a specialist. ECF No. 28, Attachment 4, pp. 2-3. Review of the record, however, indicates Beeman briefly saw Matthews on August 6, 2012, to assess whether Matthews could be placed on segregation. ECF No. 25, p. 17. Beaman noted Matthews had "no problems...at this time" and could be moved to segregation. Based on this minimal encounter between Matthews and Beeman, summary judgment shall be granted in Beeman's favor.

[10] Naproxen is a nonsteroidal anti-inflammatory drug ("NSAID") that works by reducing hormones that cause inflammation and pain. *See* http://www.drugs.com/search.php?searchterm=naproxen.

[11] Indomethacin is an NSAID. *See* http://www.drugs.com/cdi/indomethacin-sustained-release-capsultes.html#FyUTrmOdwPjbyyJT.99.

[12] Baclofen is a muscle relaxer and an antispastic agent used to treat muscle symptoms. *See* http://www/drugs/com/search.php?searchterm=baclofen.

[13] Nortriptyline is an antidepressant also used to treat neuropathic pain. *See* http://www.drugs.com/comments/nortriptyline/for-pain.html.

10

conjunction with his other medications. That same day, Defendant Flury submitted a request for neurosurgical consultation on Matthews' behalf. *Id.*, p. 2.

On March 25, 2013, Ottey presented the request for neurosurgical consultation to the utilization review committee, which reviewed the request and deferred approval with the recommendation that Matthews continue to be managed conservatively and decrease his recreational activities, which included working out with weights. *Id.*

On April 16, 2013, Ottey reexamined Matthews, who reported an inability to exercise due to pain as well as back stiffness and numbness and tingling in the lower back and left leg. No bowel or bladder incontinence was reported. On examination, Matthews' spine was positive for curvature and tenderness, and paravertebral muscle spasms were felt upon palpation. Matthews was advised to continue with his current medications and refrain from lifting weights or other heavy objects. Ottey also ordered a back brace to relieve pressure on the surrounding muscles and nerves caused by spinal curvature, which was issued on April 20, 2013.[14] *Id.*, p. 3. On April 28, 2013, Ottey requested the services of a physical therapist to help with Matthews' pain management. ECF No. 27, Attachment 1, pp. 4-6.

The care provided by Ottey and Flury did not occur in a vacuum; other health care providers also treated and continue to treat Matthews for his ongoing back pain. ECF No. 14, Attachment 4, pp. 1-74, Medical Records from July 22, 2012 to March 22, 2013; ECF No. 27, Attachment 1, pp. 1-30, Medical Records from April 19, 2013 through July 25, 2013. Among these encounters is a February 1, 2013 evaluation by Flury, who added another pain medication and issued a 90-day medical assignment for a lower bunk. Flury found no indication for a

---

[14] Flury met with Matthews on May 1, 2013, and documented that Matthews was not wearing the back brace, which he claimed provided no relief. ECF No. 27, Attachment 1, pp. 7-9.

11

special mattress. Flury again evaluated Matthews on March 21, 2013, made changes to his pain medications, and submitted a request for referral to a neurosurgeon.[15] *Id.*, pp. 51-52 and 55-56.

The physical therapist examined Matthew on May 16, 2013, and noted that he reported a history of chronic lower back pain with increased pain after 30 minutes of standing or sitting, relief when lying down, and no radiculopathy. ECF No. 27, Attachment 1, pp. 11-12. Examination revealed significant scoliosis with curving in the lumbar and thoracic regions that did not affect Matthews' gait. Matthews also demonstrated an active range of motion in the neck and upper extremities and scored well for manual muscle ability. The physical therapist recommended six sessions to decrease symptoms and establish a self-management program. *Id.* Matthews was scheduled to be evaluated by Ottey on May 31, 2013, to discuss his treatment plan, including the physical therapy sessions, but failed to attend his appointment, instead choosing to attend outdoor recreation in the yard. *Id.*, Attachment 1, pp. 12, 23.

## Analysis

Defendants Murray and Schindler seek dismissal from this action because their limited involvement with Matthews' medical care occurred well before the December 20, 2012, signature date of the complaint.[16] While there is no express period of limitations in the Civil Rights Act, federal courts generally apply the most appropriate state statute of limitations to a claim filed under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261 (1985); *Burnett v. Grattan*, 468 U.S. 42 (1984); *Cox v. Stanton*, 529 F.2d 47, 49-50 (4th Cir. 1975). Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar. *See*

---

[15] As previously noted, the referral has been deferred by a medical review panel pending further conservative treatment.

[16] The complaint was received by the Clerk on January 7, 2013. Under the "prison mail box rule," it is deemed filed as of the signature date, December 20, 2012. *See Houston v. Lack*, 487 U.S. 266 (1988); *United States. v. Dorsey*, 988 F.Supp. 917, 919-20 (D. Md. 1998).

Md. Code Ann., Cts. & Jud. Proc., § 5-101.

Although the state statute of limitations applies, the time of accrual of the action is a federal question. *Cox*, 529 F.2d at 50. The running of the statute of limitations begins when an individual knows or has reason to know of his injury. *Id.* Here, Matthews' sole contact with Murray occurred when she filled out his medical intake record on April 10, 2006, shortly after he entered the DOC. ECF No. 16, Attachment A, pp. 2-6. Matthews' two contacts with Schindler appear to center around an intake screening on March 11, 2008, upon Matthews' transfer to NBCI (during which "Lisa (Doe)" did not assign him a bottom bunk, but merely referred him to a physician for assessment), and two months later, when Schindler did not act on his requests for a bottom bunk, back brace, and orthopedic consultation opting instead refer him to Dr. Ottey. ECF No. 1, pp. 3-4. At most, these Defendants played a minor, ministerial role in Matthews' medical assessment and care prior to December 20, 2009. To the extent the allegations against these Defendants states an Eighth Amendment claim (which they do not), such claim is time-barred. Defendants Murray and Schindler are, therefore, dismissed from suit.

The claims against Defendants Ottey and Flury fare no better. Matthews' claim that Ottey did not act on his June 12, 2009 request for accommodations is outside the limitations period, and Matthews' later contacts with Ottey simply do not demonstrate a violation of the Eighth Amendment. In his opposition, Matthews claims he was denied pain medications between his first encounter with Ottey in 2009 and the time he was later treated by Ottey in 2012. ECF No. 25, pp. 6-7. The limited records show that Matthews' pain complaints surfaced in May of 2009, and on June 12, 2009, he was placed in a Chronic Care Clinic to manage the problem. *Id.*, p. 15 (Intrasystem Transfer Summary of July 22, 2012, completed by Registered Nurse Carla Buck). With the exception of one examination by Ottey in 2009, Matthews does not state –

much less document – that Ottey treated him prior to 2012.[17] While Matthews may pursue any appropriate claim against those who allegedly failed to treat his pain during that intervening period, he provides no support for his claim that Ottey should be held liable for care that Ottey did not provide.

There is no dispute that since his teenage years Matthews has suffered from severe scoliotic deformity of the thoracic spine and a compensatory scoliotic curve of the lumbar spine resulting from the curvature[18] and that he experiences back pain. ECF No. 14, Attachment 1, pp. 29-30. This unfortunate situation has remained essentially stable since Ottey examined Matthews on November 4, 2012. Ottey, a physician, states that to a reasonable degree of medical probability the care provided Matthews to date is medically appropriate, ECF No. 14, Ex. 4, p. 3, and further indicates that Matthews has ongoing access to medical staff should his current treatment regimen prove ineffective or his condition worsen. *Id.* Nothing more is constitutionally required. For the aforementioned reasons, Matthews' request for appointment of counsel shall be denied. Defendants Murray, Schindler and Beeman are dismissed and the Motions for Summary Judgment filed on behalf of Defendants Ottey and Flury are granted.[19] A separate order follows.

Date: December 3, 2013

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[17] Mathews's failure to document even one encounter with prison medical personnel or to describe a single instance where he reports of pain were not addresseed or he was denied access to the chronic care clinic during this period is striking, given his ability to recall and document events affecting his health care.

[18] That Defendant Flury, a physicians' assistant, noted the deformity to be "moderate" (ECF No. 1, p. 5) is of no moment; there is no dispute that Matthews meets the objective component by demonstrating a serious medical condition under *Estelle,* 429 U.S. at 105.

[19] To the extent Matthews intended to raise state tot claims of negligence or malpractice on the part of any Defendant, the Court declines to exercise supplemental jurisdiction over these claims.

14